IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CHARLES NEYMAN** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO.  2:04 CV 348** |
| | § | |
| **HARTFORD INSURANCE COMPANY** | § | |
| **OF THE MIDWEST** | § | |
| | § | |
| **Defendants** | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Hartford Insurance Company of the Midwest ("Hartford") has filed a Motion for

Summary Judgment against Plaintiff Charles Neyman (Docket No. 14).  For the reasons discussed

below, the Court **DENIES** Hartford's motion.

**FACTUAL BACKGROUND**

On May 6, 2001, Charles Neyman ("Neyman"), an employee of Union Pacific Railroad

("Union Pacific"), was riding in a van owned by Raudin-McCormick ("Raudin") and driven by a

Raudin employee.  The van was rear ended by a vehicle driven by Michael Davis ("Davis").  Union

Pacific had hired Raudin to transport Union Pacific employees from one location to another while

on the job.  Hartford insured the vehicle in which Neyman was riding.

In a previous action brought in the Eastern District of Texas, Neyman sued Union Pacific,

Raudin, Raudin's driver, and Davis alleging that the driver of Raudin's van was negligent for

stopping in the lane of travel instead of moving to the shoulder of the interstate when confronted

with heavy traffic.  Neyman alleged that Davis was negligent for failing to maintain an adequate

stopping distance.  The parties to this previous suit settled after voir dire but before the case was

heard by a jury.  In the settlement, Neyman received $10,000.00 from Hartford, Raudin's liability

1

insurer, for the claims against Raudin, its driver, and Union Pacific.  Neyman also received $18,000 from Davis's liability carrier for settlement of the claim against Davis.  Davis's policy had a liability limit of $20,000.

In the present case, Neyman filed suit against Hartford claiming he is entitled to underinsured motorist benefits under Raudin's Hartford policy for injuries caused by Davis's negligence because Davis was underinsured.  He claims that as a result of these injuries he has experienced substantial pain and suffering, both mental and physical, has incurred medical expenses, and suffered lost past and future earnings.

In its Motion for Summary Judgment, Hartford contends that Neyman previously recovered from Hartford under the liability portion of Raudin's Hartford policy and, therefore, cannot recover under the underinsured motorist portion of the same policy.  Hartford claims this would create a second layer of liability coverage not intended by the insurance policy and not allowed under Texas law.  Neyman responds to Hartford's motion and claims that the underinsured motorist portion of the Hartford policy is applicable because it applies to Davis's negligence and Davis's status as an underinsured motorist.

## MOTION FOR SUMMARY JUDGMENT

Summary Judgment Standard

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317,323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon  motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Summary judgment is appropriate when the only issue before the court is a question of law. *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991); *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976). Here, the facts of the case are undisputed by Hartford and the only question before the Court is whether or not Neyman can recover underinsured motorist benefits under the Hartford policy in accordance with Texas law. The only evidence before the Court on this motion is the insurance policy in question.

Uninsured and Underinsured Motorists Under Texas Law

The Court has diversity jurisdiction over this case and, therefore, must apply Texas law. 28 U.S.C. § 1332; *Stephens v. State Farm Mut. Auto. Ins. Co.*, 508 F.2d 1363, 1366 (5th Cir. 1975). The Court has not found a Texas case directly on point with the present case, so the Court must predict what the Supreme Court of Texas would hold if the issue was squarely presented to it. *Stephens*, 508 F.2d at 1366.

Texas Insurance Code article 5.06-1 mandates that all automobile insurance policies provide uninsured and underinsured motorist protection. *See* TEX. INS. CODE ANN. art 5.06-1(1) (Vernon 1981). The purpose of the statute is to give insured motorists limited protection from injuries and property damage caused by financially irresponsible motorists who have no insurance or an insufficient amount to cover the insured's damages. *See Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 268 (Tex. 1999). The Texas Legislature empowered the State Board of Insurance to promulgate the forms that become part of the standard Texas automobile insurance policy. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861, 864 (Tex. App.—Dallas 1994, writ denied). The Legislature specifically authorized the Board to exclude certain motor vehicles from

3

the standard definition of uninsured and underinsured motor vehicles in the standard Texas automobile insurance policy form.  *Id*.  In accordance with this authority, the Board defined "uninsured/underinsured motor vehicle" to exclude "any vehicle or equipment owned by or furnished or available for the regular use of the insured or any family member."  *Id*.  Thus, the Board authorized insurance companies to exclude a policyholder from the definition of uninsured/underinsured motorist in his policy.  Similar language is present in Raudin's Hartford policy.

Texas courts have been presented with facts similar to those in the present case.  Several Texas courts have been presented with fact patterns where the passenger of a car was injured in an accident and, after recovering under the liability portion of the insured driver's policy, attempted to recover underinsured motorist benefits under the same insured driver's policy claiming that driver was underinsured.[1]  *See Griffin*, 868 S.W.2d 861; *State Farm Mut. Ins. Co. v. Conn*, 842 S.W.2d 350 (Tex. App.—Tyler 1992, writ denied); *Rosales v. State Farm Mut. Auto. Ins. Co.*, 835 S.W.2d 89 (Tex. App.—Austin 1992, writ denied).  In *Rosales* and *Conn*, injured passengers attempted to recover underinsured motorist benefits from the policy of the insured driver in whose car they were riding, claiming that driver was an underinsured motorist.  *See Rosales*, 835 S.W.2d at 805; *Conn*, 842 S.W.2d at 351.  The passengers had already received benefits from both the liability portion of the insured drivers' policies and from the underinsured portion of their own personal policies.  *See Rosales*, 835 S.W.2d at 805; *Conn*, 842 S.W.2d at 351.  Similarly, in *Griffin*, a family injured in an accident caused by the father, the driver of the vehicle, sued their insurance company to recover underinsured motorist benefits under their policy after they had recovered under the liability portion of their policy.  868 S.W.2d at 862.  In all three of these cases, it was undisputed that the insured

---

[1] "Insured driver" refers to the driver of the car the passenger was riding in..

4

driver of the car in which the passengers were riding was at fault for causing the accident. *See Rosales*, 835 S.W.2d at 805; *Conn*, 842 S.W.2d at 351; *Griffin*, 868 S.W.2d at 862. Furthermore, in each of these cases, the courts held that the passengers could not recover under the underinsured motorist portion of the insured driver's policy because the definition of uninsured or underinsured motorist in the insured's policy excluded the policyholder. *See Rosales*, 835 S.W.2d at 806; *Conn*, 842 S.W.2d at 354; *Griffin*, 868 S.W.2d at 869. In each case, the courts held that under the specific facts of the case it was not against public policy to withhold underinsured motorist benefits from the injured passengers. *See Rosales*, 835 S.W.2d at 806; *Conn*, 842 S.W.2d at 354; *Griffin*, 868 S.W.2d at 870. Although Hartford relies on these cases, they are distinguishable from the present case on the important fact that the passengers in the above cases attempted to recover underinsured motorist benefits under their own drivers' policy for their own drivers' negligence and not the other drivers' negligence.

Analysis

     Hartford claims that Neyman's attempt to recover underinsured motorist benefits under Raudin's policy is an attempt to convert the underinsured protection into another layer of liability insurance. The Court disagrees. Hartford cites both *Conn* and *Rosales* for the proposition that when an injured passenger recovers under both the liability portion and the underinsured motorist portion of a policy it converts the underinsured motorist portion of the policy into a second layer of liability coverage. However, Hartford misreads the cases because the facts here are distinguishable from both *Conn* and *Rosales.*

     If Neyman were trying to recover for the negligence of Raudin's driver, then the language cited by Hartford would be controlling because Neyman would be trying to recover under both the liability portion and the underinsured portion of the Hartford policy for the insured driver's

negligence.  Texas courts have clearly held this is impermissible because it creates another layer of liability insurance.  However, in the present case, Neyman attempts to recover underinsured motorist benefits under the Hartford policy for Davis's negligence, not the negligence of Raudin's driver. Davis is not an insured driver under Raudin's Hartford policy.

Hartford also claims that Neyman's ability to recover underinsured motorist benefits would be contrary to the terms and premiums of the Hartford insurance policy.  Again, the Court disagrees. If a court allows a passenger to recover underinsured motorist benefits for the negligence of an underinsured motorist policy holder because that policy holder had insufficient liability coverage, the court would create a second layer of liability coverage.  This produces a situation not contemplated by the parties when they entered into the insurance agreement.  *See Rosales*, 835 S.W.2d at 806.  However, in the present case, Neyman is trying to recover underinsured motorist benefits for the negligence of a driver, other than the underinsured motorist policy holder, because that other driver had insufficient liability coverage.  Here, Neyman is trying to recover underinsured motorist benefits from Hartford, Raudin's insurer, because Davis had insufficient liability coverage. Neyman's situation represents exactly what the parties contemplated when they made the agreement as to who might recover underinsured motorist benefits, a passenger injured by a negligent driver, other than the underinsured policy holder, with insufficient liability insurance.

Finally, Hartford argues that withholding underinsured motorist benefits from Neyman would not offend public policy and the legislative intent of article 5.06-1.  The Court disagrees.  In the present case, withholding underinsured motorist benefits from Neyman would be directly contrary to the public policy and legislative intent of article 5.06-1.  The Texas Supreme Court stated in reference to the underlying policy behind article 5.06-1: "Article 5.06-1 is to be construed, liberally to give the full effect to the public policy which led to its enactment.  The purpose of the statute, as

6

stated therein is 'the protection of persons insured thereunder who are legally entitled to recover damages from owners and operators of uninsured or underinsured vehicles. . . .'" *Stracener v. United Serv. Auto. Assoc.*, 777 S.W.2d 378, 382 (Tex. 1989) (citing TEX. INS. CODE ANN. ART. 5.06-1(1) (Vernon 1981)).  The Tyler Court of Appeals in *Conn* agreed with the San Antonio Court of Appeals' clarification of the Legislature's intent and stated that the initial objective of enacting article 5.06-1 was to protect conscientious motorists from "financial loss caused by negligent financially irresponsible motorists . . . ."  *See* 842 S.W.2d at 352.  The *Conn* court also agreed that "an insured's intent in purchasing [uninsured and underinsured motorist] coverage *in addition to* liability coverage was to protect the insured's family and guests from the *negligence of others*."  *Id*. (citing *Briones v. State Farm Mut. Auto. Ins.*, 790 S.W.2d 70, 73 (Tex. App.—San Antonio 1990, writ denied)).  The *Conn* court further agreed that "to ascertain whether a particular exclusionary provision in a[n] [uninsured or underinsured motorist] policy is valid it must be determined 'whether the invocation of the exclusion would, *under the circumstances of the particular case under consideration*, operate to deprive an insured of the protection required by the Texas Uninsured Motorist Statute.'"  *Id*. at 353 (citing *Briones*, 790 S.W.2d at 74).

Considering the language in *Conn*, the purpose of article 5.06-1 is clearly to provide protection to motorists and their passengers from other drivers that either do not have insurance or are not sufficiently covered to indemnify injured parties for their injuries and damages.  As the Texas courts point out, people buy uninsured and underinsured motorist coverage to protect themselves and their passengers from the negligence of others.   In the present case, Raudin purchased the underinsured motorist policy to protect its drivers and passengers from the negligence of other underinsured drivers.  Neyman, as a passenger in Raudin's van, was entitled to protection from other negligent underinsured drivers.  The Texas Supreme Court has held that "a negligent party is

7

underinsured whenever the available proceeds of his liability insurance are insufficient to compensate for the injured party's actual damages." *Stracener*, 777 S.W.2d at 380.  Neyman claims Davis's negligence caused him injuries that resulted in damages greater than the $18,000 he recovered from Davis under the liability portion of Davis's policy.  Interpreting the exclusionary clause of the underinsured motorist definition in the Hartford policy to exclude Neyman from recovering for Davis's negligence would be contrary to the legislative intent of the underinsured motorist statute, as well as Raudin's intent in purchasing the coverage.

## CONCLUSION

Hartford has not established that Neyman is prohibited from recovering underinsured motorist benefits under Raudin's Hartford policy under Texas law.  Accordingly, the Court **DENIES** Hartford's Motion for Summary Judgment.

**So ORDERED and SIGNED this 7th day of October, 2005.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**